IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


DERRICK SMITH, #A01044694,    )        CIVIL NO. 06-00618 SOM-KSC
                              )
          Petitioner,         )        FINDINGS AND RECOMMENDATION
                              )        TO DENY THE AMENDED PETITION
     vs.                      )
                              )
STATE OF HAWAII, et al.,      )
                              )
          Respondents.        )
_____)

### FINDINGS AND RECOMMENDATION TO DENY THE AMENDED PETITION

Before the court is *pro se* Petitioner Derrick Smith's amended petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254.  (Doc. No. 8.)  The Amended Petition was referred to this court pursuant to 28 U.S.C. § 636(a).  For the following reasons, this court FINDS that Grounds One and Three are without merit and that Ground Two is procedurally barred from federal review.  The court therefore RECOMMENDS that the Amended Petition be DENIED in its entirety.

### BACKGROUND

Smith is challenging his August 23, 2004, conviction in the Circuit Court of the First Circuit, State of Hawaii (circuit court), for second degree murder, in violation of Hawaii Revised

Statutes § 707-701.5 (1993).  Smith was convicted of the murder of his infant son, Kelbey Bridenstine.

Smith directly appealed, raising three points of error: the circuit court erred by (1) admitting Smith's statement, uttered seven weeks before the baby died, "Do you want me to drop that baby over the balcony;" (2) admitting a full-length photograph of Smith into evidence; and (3) permitting the deputy prosecuting attorney ("DPA") to use a PowerPoint[1] slide presentation, amounting to prosecutorial misconduct, during opening and closing arguments, with (a) a photograph of the baby imprinted with the words, "My father killed me;" (b) autopsy photographs of the baby with allegedly inappropriate text; and © photographs of Smith with allegedly inappropriate text.  (Resps.' Ex. R, "Opening Brief of Defendant-Appellant," 12-21.)

On March 28, 2006, the Hawaii Supreme Court affirmed Smith's conviction by summary disposition order.  (Resps.' Ex. U.) Notice and Judgment on appeal was filed on April 12, 2006. (Resps.' Ex. V.)  The record does not disclose whether Smith sought certiorari with the United States Supreme Court.

Smith commenced this action on November 20, 2006, and filed the Amended Petition and Memorandum in Support on December 19, 2006.  (Doc. Nos. 1, 7 & 8.)  Smith alleges that the circuit

---

[1]"PowerPoint" is a registered trademark of the Microsoft Corporation for its graphics presentation software.

court violated his "due process rights to a fair trial," raising
three grounds for relief: the circuit court erred by (1)
admitting his "misconst[ru]ed [and] misinterpreted statement,"
uttered seven weeks before the baby's death, "Do you want me to
drop that baby over the balcony?"(Ground One); (2) allowing a
full-length photograph of Smith to be introduced and used at
trial (Ground Two); and (3) permitting the DPA to use PowerPoint
slides during opening statement and closing argument, some
containing allegedly inappropriate text, of the newborn wrapped
in a blanket, autopsy photographs of the baby, and the full-
length photograph of Smith (Ground Three).  (Pet. 6-9.)

### LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of
1996 (AEDPA), habeas corpus relief may not be granted on any
claim that was adjudicated on the merits in state court unless
the adjudication "resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly established
Federal law as determined by the Supreme Court of the United
States" or the adjudication "resulted in a decision that was
based on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding."  28 U.S.C.
§ 2254(d)(1)(2); *Williams v. Taylor*, 529 U.S. 362, 402-04 (2000).

"A decision is 'contrary to' federal law when a state court
applies a rule of law different from that set forth" in Supreme

Court holdings or when it makes a contrary determination based on "'materially indistinguishable facts.'"  *Earp v. Ornoski*, 431 F.3d 1158, 1182 (9th Cir. 2005) (quoting *Williams*, 529 U.S. at 405-06).  An "unreasonable application" occurs when the state court applies Supreme Court holdings to the facts of the petitioner's case in a manner that is "objectively unreasonable." *Alberni v. McDaniel*, 458 F.3d 860, 863 (9th Cir. 2006).  "Clearly established federal law 'as determined by the Supreme Court, refers to the holdings, as opposed to the dicta of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Earp*, 431 F.3d at 1182 (quoting *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004)) (internal citation omitted).

## DISCUSSION

I.   <u>Trial Error as Opposed to Structural Error.</u>

The court first addresses, and rejects, Smith's argument in his Reply Brief, that his claims regarding the admission and presentation of evidence to the jury must be reviewed as structural errors, requiring immediate reversal, rather than as trial errors subject to the harmless error standard.  (*See* Reply 6-7.)

Constitutional violations are categorized as either trial error or structural error.  *Arizona v. Fulminante*, 499 U.S. 279, 306-10 (1991).  Trial errors "occur during the presentation of the case to the jury," and are amenable to harmless-error

4

analysis because they can "be quantitatively assessed in the context of other evidence presented" to determine the effect on the trial. *Fulminante*, 499 U.S. at 307-308.  The admission of an involuntary confession, or in fact, of any evidence at trial, is the quintessential definition of trial error, i.e., any submission that can easily be reviewed against the remainder of the evidence presented, to determine whether it had a harmless or prejudicial effect on the outcome of trial.  *See id.* at 310.

In contrast, structural errors are "defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards," *id.* at 309, and require "automatic reversal of the conviction because they infect the entire trial process."  *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993). Examples of structural errors are: the complete denial of counsel at trial or sentencing[2]; a biased trier-of-fact[3]; the unlawful exclusion of members of the defendant's race from a jury[4]; the denial of the right to self-representation at trial[5]; and the denial of a public trial.[6]  These deprivations are "structural" because they affect the framework within which the trial

---

[2]*See Gideon v. Wainwright*, 372 U.S. 335 (1963).

[3]*See Tumey v. Ohio*, 273 U.S. 510 (1927).

[4]*See Vasquez v. Hillery*, 474 U.S. 254 (1986).

[5]*See McKaskle v. Wiggins*, 465 U.S. 168, 177-178, n.8 (1984).

[6]*See Waller v. Georgia*, 467 U.S. 39, 49, n.9 (1984).

5

proceeds, rather than simply an error in the trial process itself. *Fulminante*, 499 U.S. at 309-10.

Smith's claims are clearly trial errors, challenging the admission or presentation of evidence during trial, and will be reviewed under *Brecht*'s harmless error standard. *See Brecht*, 507 U.S. at 623 (holding that the limited scope of federal habeas review does not warrant relief unless trial errors had a "substantial and injurious effect or influence in determining the jury's verdict" and deprived the petitioner of a fair trial in violation of due process).

II.  <u>Ground One: Admission of Smith's Statement.</u>

Smith argues that the circuit court erred by allowing testimony from the baby's mother, Erica Bridenstine, recounting a statement Smith made seven weeks before the baby died. Bridenstine testified that, during an argument a week after the baby was born, Smith said, "do you want me to drop that baby over the balcony?" (Resps.' Ex. I, 23.)  Smith denied that he said this, alleging that he actually said that he would take the baby and drop him off in Brooklyn, where his mother resides.  (Amd. Pet. 6; Resps.' Ex. L, 39-40.)  He further argues that this admission "was irrelevant and unduly prejudicial and denied him of his due process right to a fair trial." (*Id.* 2.)

6

On direct appeal, Smith alleged that the admission of this testimony violated Hawaii Rules of Evidence 402[7], 403[8], and 404(b)[9], as well as his federal and state constitutional rights to due process and a fair and impartial trial.  The Hawaii Supreme Court held that Smith failed to meet his burden of

---

[7]Rule 402 provides:

*Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible*[.] All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawaii, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

[8] Rule 403 provides:

*Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time*[.] Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[9] Rule 404(b) provides:

*Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes*[.]
                              ...

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible where such evidence is probative of any other fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

demonstrating that the circuit court abused its discretion by permitting the statement. (Resps.' Ex. U, 2). The supreme court noted that the circuit court held a hearing on whether the statement should be allowed, expressly balanced the probative value of the statement against its prejudicial effect, and provided limiting instructions to the jury several times concerning the statement. (*Id.*)

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. *See Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000) (stating that "[t]he improper admission of evidence does not violate the Due Process Clause unless it is clearly prejudicial and rendered the trial fundamentally unfair" ) (internal quotation and citation omitted); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991). Even when evidence is erroneously admitted, a federal court cannot interfere absent some apparent violation of fundamental due process and the right to a fair trial. *See Hill v. United States*, 368 U.S. 424, 428 (1962); *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993).

The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it

8

rendered the trial fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995).  Generally, only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process.  *See Jammal*, 926 F.2d at 920.

In order to obtain habeas relief on the basis of evidentiary error, petitioner must show that the error was one of constitutional dimension and that it was not harmless under *Brecht*, 507 U.S. at 629-30.  Thus, the court must find that the error had "'a substantial and injurious effect' on the verdict." *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting *Brecht*, 507 U.S. at 623) (further quotations omitted).

At the hearing on the Motion in Limine #5, the DPA sought introduction of the statement to rebut Smith's defense that he accidentally dropped the baby, and to prove intent and knowledge. (*See* Resps.' Ex. G., 22-23.)  Smith objected, arguing the statement was too attenuated in time, having occurred seven weeks prior to the baby's death, to be probative of Smith's state of mind.

The circuit court carefully considered Bridenstine's testimony regarding Smith's statement and determined that Smith made the statement as testified to by Bridenstine, and that it was not too attenuated in time.  The court concluded that it was reasonable to infer that Smith "asked the question because he was

9

unhappy about the sacrifices" he was being required to make since the baby's birth, and was still unhappy during the seven weeks between the statement and the baby's death. (Resps.' Ex. H 10-11.)

The court next considered the need for the statement, finding that there was not "a plethora of evidence going to state of mind," and that there was no sufficient alternative evidence available to support the DPA's theory, thus, finding substantial need for the statement. (Resps.' Ex. H. 12.) The circuit court then examined the risks of unfair prejudice, confusion, or waste of time if the statement was introduced. The court concluded that, because the evidence was a statement, rather than an act, the likelihood of its being improperly used as proof of Smith's propensity to act in a certain way was minor. The court also found that, because a limiting instruction would be given to the jury, both orally and in the jury instructions, any danger of the statement inducing "overmastering hostility" in the jury was negligible. (*Id.*) The court therefore found that the possibility of unfair prejudice by introducing the statement was outweighed by its probative value.

As noted above, a federal habeas court has no authority to review challenges to state-court determinations of state-law questions. *Estelle*, 502 U.S. at 68. Habeas review is limited to determining whether a conviction violated the Constitution, laws,

or treaties of the United States.  28 U.S.C. § 2241; *Rose v. Hodges,* 423 U.S. 19, 21 (1975).  A federal habeas court "cannot review questions of state evidence law" and may only consider "whether the petitioner's conviction violated constitutional norms." *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). The circuit court's carefully considered admission of this statement was clearly not so arbitrary or prejudicial that it violated such constitutional norms.

Although Smith insists that admitting the statement violated his constitutional rights, the record does not support the conclusion that the introduction of Smith's statement fatally infected the trial's fundamental fairness.  Although the statement may have been damaging to Smith's defense, that fact alone does not render its admission unfair.  Smith's statement was neither "macabre" nor "particularly inflammatory." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 898 (9th Cir. 1996).  Nor is there evidence in the record or other reason to believe that it rendered the jury incapable of rational thought.  *See United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir.1987) (evidence is unfairly prejudicial if it "makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or

11

innocence of the crime charged" ) (emphasis added) (citation omitted).

Defense counsel had the opportunity to cross-examine Bridenstine concerning the statement.  In doing so, counsel adduced evidence that Smith had never harmed the baby, that Bridenstine was comfortable with Smith watching the baby, that when the statement was made it was Bridenstine who was angry, not Smith, and that even after the statement was made, Bridenstine was not alarmed or afraid to let Smith watch the baby.  (Resps.' Ex. I, 32-33.)  Smith also had the opportunity to personally rebut the statement during his own testimony, leaving it to the jury to decide which testimony was more credible.  (Resps.' Ex. L, 39-40.)

Moreover, the circuit court gave several limiting instructions on this evidence to the jury.  *See Walters*, 45 F.3d at 1357-58 (stating that the danger of unfair prejudice is reduced by court's limiting instruction that the evidence could be used only to show, *inter alia*, the absence of mistake or accident and not to show defendant's bad character.)  Immediately following Bridenstine's testimony, the court instructed the jurors that the statement could not be used as character evidence against Smith, or as evidence that he later acted in conformity with the statement, and that it was admitted only to show "proof or lack of proof of a possible motive, intent, knowledge, or

absence of mistake or accident." (Resps.' Ex. H, 23-24.) The court repeated this admonition during final jury instructions. (Resps.' Ex. M, 28-29.)

Under these circumstances, the circuit court's decision to allow the jury to decide what weight to attach to Smith's statement was not inconsistent with the court's duty to protect the trial's fundamental fairness. The circuit court's decision, and the supreme court's affirmance, was neither contrary to nor an unreasonable application of federal law as set forth by the United States Supreme Court. Accordingly, Smith is not entitled to habeas relief on this basis.

III. <u>Ground Two: Admission of Smith's Photograph.</u>

Smith claims that the circuit court erred by admitting his full-length photograph into evidence. Smith alleges that the photograph, admitted as State's Exhibit 25 at trial, was irrelevant and prejudicial and violated his rights to due process and a fair trial. Although Smith raised this claim on direct appeal, the supreme court rejected it as procedurally defaulted. The supreme court found that Smith's attorney did not object to the introduction of this particular photograph into evidence at trial, and had therefore waived any objection to it on appeal. (*See* Resps.' Ex. U, 2-3.)

A federal court is precluded from reviewing the merits of a claim when the state court has denied relief on the basis of an

13

independent and adequate state procedural default such as a contemporaneous objection rule.  *See Lee v. Kemna*, 534 U.S. 362, 375 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). For the procedural default doctrine to apply, however, the state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.  *Hanson v. Mahoney*, 433 F.3d 1107, 1113 (9th Cir. 2006) (citations omitted).

Generally, there is no procedural default unless "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."  *Coleman*, 501 U.S. at 735-36 (citation and quotation marks omitted).  Nonetheless, an implied procedural default can occur when a petitioner fails to raise a claim at the state level and would be procedurally barred from presenting it if he returned to state court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

Procedural default can be excused when the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  If the petitioner can establish one of these exceptions, the federal court may consider the procedurally defaulted claim.  *See id.*

To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (examples include government interference or reasonable unavailability of factual basis for claim).  If the petitioner has not demonstrated cause for procedural default, the federal court need not consider the issue of prejudice.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991).

The Hawaii Supreme Court expressly barred Smith's claim regarding the full-length photograph, stating that "[i]t is axiomatic that a party must make a specific objection in order to preserve a point of error on appeal." (Resps.' Ex. U, 3.)  The supreme court relied on long-standing Hawaii evidentiary rules and case law to do so.  *See* Haw. R. Evid. 103(a)(1) (1993); *State v. Long*, 48 P.3d 595, 600 (Haw. 2002); *State v. Fox*, 760 P.2d 670, 675 (Haw. 1988).  This court finds that this procedural rule was clear, consistently applied, and well-established in Hawaii at the time of Smith's trial and appeal.  (*See id.*)

Smith was represented by counsel at trial and he makes no claim here, nor did he on appeal, that his counsel was ineffective to the extent of establishing cause for the error. Because Smith has never raised an ineffective assistance of counsel claim, he cannot use this as an excuse to establish cause

15

for a procedural default in a federal habeas proceeding.
*Carrier*, 477 U.S. at 488-89; *Eisermann v. Penarosa*, 33 F. Supp.
2d 1269, 1275 (D. Haw. 1999).  Nor does Smith allege any other
reason excusing his default.  Because Smith has not established
cause, this court need not examine whether he has demonstrated
actual prejudice.  *See Thomas*, 945 F.2d at 1123 n.10.

Smith also fails to establish that he is actually innocent
such that a failure to consider this claim will result in the
fundamental miscarriage of justice.  This exception "applies only
when a constitutional violation probably has resulted in the
conviction of one actually innocent of a crime and petitioner
supplements his constitutional claim with a colorable showing of
factual innocence[.]"  *Casey v. Moore*, 386 F.3d 896, 921 n.27
(9th Cir. 2004).  To establish actual innocence a petitioner must
establish that it is more likely than not that no reasonable
juror would have found him guilty beyond a reasonable doubt in
light of new evidence.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995);
28 U.S.C. § 2254(c)(2)(B); *Calderon v. Thompson*, 523 U.S. 538,
559 (1998) ("[T]he miscarriage of justice exception is concerned
with actual as compared to legal innocence . . . . Given the
rarity of [reliable] evidence [of actual innocence], in virtually
every case, the allegation of actual innocence has been summarily
rejected.") (internal quotation marks and citations omitted).
Smith has presented no new evidence whatsoever demonstrating his

actual innocence.   Nor can this court say that, but for the admission of this evidence, no reasonable juror would have convicted him.   *Schlup*, 513 U.S. at 327.   Accordingly, this claim is procedurally barred from federal review and should be denied.

IV.   <u>Ground Three: The PowerPoint Presentations.</u>

Smith claims that his rights to due process and to a fair trial were violated by the DPA's PowerPoint presentation of photographs of the newborn baby wrapped in a blanket, autopsy photographs of the baby, and the full-length photograph of Smith discussed above, some with allegedly inappropriate text, during his opening statement and closing argument.

In reviewing this claim, the Hawaii Supreme Court noted that Smith had failed to object to most of these slides at trial, having only "specifically objected to the prosecution's use of the baby's photograph in its opening PowerPoint presentation." (Resps.' Ex. U, 3 n.6.)   Despite Smith's failure to object to all of the slides, the supreme court determined that it could review Smith's allegations of prosecutorial misconduct under a plain error standard.   (*Id.* (citing *State v. Wakisaka*, 78 P.3d 317, 326 (Haw. 2003); *see also* Haw. R. Evid. 103(2)(d).)

Clearly established federal law establishes that, for allegations of prosecutorial misconduct to succeed on a writ of habeas corpus, "it 'is not enough that the prosecutors' remarks were undesirable or even universally condemned[,]' [t]he relevant

question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations omitted); *Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005) (stating, "under *Darden*, the first issue is whether the prosecutor's remarks were improper and, if so, whether they infected the trial with unfairness."). Thus, federal habeas review for a claim of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).

To determine if a petitioner's due process rights were violated, the court "must consider the probable effect of the prosecutor's [comments] on the jury's ability to judge the evidence fairly." *United States v. Young*, 470 U.S. 1, 12 (1985). To do so, the prosecutor's remarks must be viewed in context. *See Boyde v. California*, 494 U.S. 370, 385 (1990); *United States v. Robinson*, 485 U.S. 25, 33-34 (1988); *Williams v. Borg*, 139 F.3d 737, 745 (9th Cir. 1998). Although not limited to the following, factors to consider in this analysis are whether the prosecutor's comments manipulated or misstated the evidence; whether the trial court gave a curative instruction; and the weight of the evidence against the accused. *Darden*, 477 U.S. at 181-82.

A.   Opening Statement

Prior to opening statements, the DPA provided the court with a hard copy of the PowerPoint slides he intended to use. (Resps.' Ex. AA.)  The three pictures at issue here are: (1) State's Exhibit 25, the full-length photograph of Smith discussed above in § II;[10] (2) State's Exhibit 28, an autopsy photograph of the infant showing injuries to his nose and face;[11] and (3) State's Exhibit 40, a photograph of the infant as a newborn, wrapped in a blanket.[12]  (See Resps.' Exs. W, Y, Z, & AA.)

After viewing the copies of these slides and reading the DPA's opening statement, this court cannot find that the introduction of these photographs, whether by PowerPoint presentation or otherwise, was so improper as to render the trial fundamentally unfair.

The purpose of opening statement is "to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of evidence and testimony to the whole, it is not an occasion for argument." United States v Dinitz, 424 U.S. 600, 612 (1976).  The DPA's opening PowerPoint

---

[10] Exhibit 25 was used in slides 9, 14, 25, 26, 28, and 30 in the DPA's opening presentation.  (See Resps.' Ex. AA.)

[11] Exhibit 28 was used in slides 32 and 36 in the DPA's opening presentation. (See Resps.' Ex. AA.)

[12] Exhibit 40 was used in slides 2, 4, 5, 7, 13, and 20 in the DPA's opening presentation. (See Resps.' Ex. AA.)

presentation clearly complied with those prescriptions.  First, the photograph of Kelbey wrapped in a blanket, Exhibit 40, was accompanied by text communicating basic information about the child, his date of birth, his weight and length, and his general health.  While, as the supreme court noted, the use of these slides may have engendered sympathy for the infant and his mother, it was not so overarching as to prejudice Smith's right to a fair trial.  (See Resps.' Ex. U, 8-9.)  The DPA's use of these slides did not misstate the expected evidence or constitute improper argument.

Second, as noted above, Smith failed to raise an objection at trial to the introduction of his full-length photograph, thereby waiving any objection to it on appeal, or in this federal habeas action.  Even if the objection had been preserved was now properly before the court, the introduction of the photograph did not constitute improper or inflammatory argument during the opening statement.  The photograph simply shows Smith standing against a wall of the apartment where the baby was killed.  The photo does not portray Smith in a demeaning or frightening manner.  Moreover, the photo is useful in that it illustrates for the jury the distance between Smith's arm and the tile floor, which was an issue due to Smith's argument that he accidentally dropped the baby to the tile floor while holding the child on his forearm, perpendicular to the floor.

Nor does the accompanying text necessarily render the photograph improper or inflammatory.  Most of the text is a summary of the evidence that the DPA reasonably expected to be adduced at trial, including Smith's three dissimilar statements about what had happened.  The only possibly questionable text was the photograph with "I should drop the baby off the balcony" imposed upon it.  This statement somewhat mischaracterizes the testimony expected from Bridenstine, that Smith said "do you want me to drop the baby off the balcony."  It is not, however, so different as to render the resulting conviction a denial of due process.  *See Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Turner v. Calderon*, 281 F.3d 851, 868 (9th Cir. 2002).

Finally, the two slides of the autopsy photograph of Kelbey, with text listing the extent of the injuries suffered, were not so inflammatory as to infect the whole trial and violate due process.  *See Kealohapauole v. Shimoda*, 800 F.2d 1463, 1466 (finding no denial of due process from admission of videotape of autopsy procedure).  Neither the photograph itself, nor the written information conveyed on the slide, was so disturbing or gruesome as to warrant excluding the PowerPoint slides.[13]

---

[13] The court notes that in the majority of cases involving gruesome photographs or other demonstrative evidence, most courts have refused to overturn verdicts because of the introduction of such photographs. *See, e.g., Jones v. Butler*, 864 F.2d 348, 368

(continued...)

The record does not show that the trial judge abused his discretion in admitting these photos.  This is made more clear when these photographs are taken in context.  Just prior to the DPA's opening statement, the circuit court instructed the jurors that the opening statements of the parties were simply an introduction of what to expect at trial and were not to be confused with evidence.  (Resps.' Ex. H, 20-21.)  This court "must presume that jurors follow the court's instructions, absent extraordinary situations." *Tak Sun Tan*, 413 F.3d at 1115 (citing *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985)).  Smith's arguments notwithstanding, this is not such an "'extraordinary situation[ ]' where [the court] can lay aside the 'crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions.'" *Id*.  Smith has failed to show that the admission of these photos at opening statement rendered his trial fundamentally unfair.

---

[13](...continued)
(5th Cir. 1988) (photographs showed buttocks areas with blood trickling down from the genital area and of victim's legs spread apart showing genital area); *Schneider v. Delo*, 890 F. Supp. 791, 841 (E.D. Mo. 1995), *aff'd.*, 85 F.3d 335 (8th Cir. 1996) (gruesomeness of photos is directly attributable to the crime itself, and counsel's desire to stipulate to facts of death was irrelevant); *Odle v. Calderon*, 884 F. Supp. 1404, 1425 (N.D. Cal. 1995); *Murray v. Delo*, 767 F. Supp. 975, 987 (E.D. Mo. 1991) (photographs aided the jury in analyzing the oral testimony); *Williams v. Chrans*, 742 F. Supp. 472, 491 (N.D. Ill.1990), *aff'd.*, 945 F.2d 926 (7th Cir. 1991) (use of photos justified, in part, for demonstrating nature of force used on victim).

B.   <u>Closing Argument</u>

Smith also alleges that the presentation of these photos on closing argument, including text imposed over Kelby's newborn photo, Exhibit 40, stating "My father killed me," the autopsy photograph, Exhibit 28, with text stating "No accident," and repeated use of Smith's full-length photo, Exhibit 25, violated his rights to due process and a fair trial.[14]

At trial, Smith placed great weight on the possibility that the text "My father killed me," on Kelbey's photo would make it appear that Kelbey was attesting to that fact.  In response, the DPA removed the quotation marks from the photograph, and made clear in his accompanying argument that, in fact, the baby was unable to testify or to tell the jury what had happened.  (*See* Resps.' Ex. M, 43-45.)  On appeal, Smith argued that *all* of these slides, with their accompanying text, "crossed the line between permissible and impermissible argument, as the photographs served no useful or explanatory purpose but rather only served to inflame the jury's emotions." (Resps.' Ex. R, 33.)  The Hawaii Supreme Court disagreed, holding that the PowerPoint presentation did not amount to prosecutorial misconduct.

---

[14] During closing argument, State's Exhibit 25 was used in slides 6, 7, 8, 9, 26, 29, 30, and 31; State's Exhibit 28 was used in slides 3, 10, and 34; and State's Exhibit 40 was used in slide 2. (*See* Resps.' Ex. BB.)

First, attorneys have great latitude in the presentation of their closing arguments. *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996). Second, evidence which is probative of an element of the crime may be introduced whether or not that element is specifically contested by the defense. *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991). These photos were all relevant to elements of the crime, such as intent, motive, absence of mistake, cause of death, etc., which the DPA was obligated to prove.

Third, the autopsy photograph with the imposed text "No Accident," seen three times in the closing presentation, were not so improper and inflammatory as to deny Smith fundamental due process. As noted above, the photo itself is not particularly gruesome, and the text simply supports the DPA's argument that the injuries were not accidental, but intentional. *See supra*, n.13. (noting that evidence decidedly more disturbing than this one were not excluded from evidence in other cases).

As for the other two photos, of newborn Kelbey wrapped in a blanket with the statement "My father killed me," and Smith standing against a wall, this court is convinced that they only supported the reasonable inferences that the DPA had put forth during trial, and were not unduly prejudicial. As noted above, the photo of Kelbey might have engendered sympathy for the baby and his mother, but not to such an extent as to infect the trial

24

with overarching hostility toward Smith.  And the photos of Smith have no such impact, and are probative of the issue of cause of death and lack of mistake or accident.

Nor did the DPA use these photographs or their text improperly, either to vouch for the credibility of a government witness or to offer the DPA's personal opinion on Smith's culpability.  *See United States v. Young*, 470 U.S. 1, 19 (1985). Neither did the DPA misstate or manipulate the evidence by presenting these photos and their text.

Moreover, the circuit court instructed the jurors that their decision was to be based only on the evidence produced in court, defining that evidence as witness testimony and exhibits. (Resps.' Ex. M, 24-31.)  The jurors were specifically admonished that the lawyers' statements, and the visual evidence (i.e. the PowerPoint presentations) during opening and closing argument were not evidence.  (*Id.* 24, 39.)  Furthermore, they were instructed not to be "influenced by sympathy or prejudice."  (*Id.* 25.)  These admonishments and instructions significantly limited any possible prejudice caused by the photograph's or their text. *See, e.g., Furman v. Wood*, 190 F.3d 1002, 1006 (9th Cir. 1999) (upholding the state court's ruling that the prosecutor's improper statements did not render trial fundamentally unfair because the prosecutor also told the jury that his arguments were not evidence, and because the government presented a strong case

against the defendant); *Hall v. Whitley*, 935 F.2d 164, 165-66 (9th Cir. 1991) (holding that the prosecutor's improper comments were isolated moments in a three day trial, and their effect was mitigated by the judge's instructions that closing arguments were not evidence, and the strong proof of the defendant's guilt).

Additionally, the great weight of the other evidence presented against Smith, including his conflicting statements, the unlikelihood that the baby's serious and multiple injuries resulted from a single accidental fall, as Smith posited, and the fact that Smith was the only person with the baby at the time of death, militates in favor of a finding of no prosecutorial misconduct here.

In summary, the photographs and text presented on the DPA's opening and closing arguments neither misstated the evidence nor inflamed the passions of the jury.  The circuit court carefully instructed the jury several times on the weight to be accorded the DPA's PowerPoint presentations.  The evidence presented against Smith was substantial.  Analyzed in this context, the introduction of these photos did not amount to prosecutorial misconduct.  *See Darden*, 477 U.S. at 181-82.  Accordingly, this claim should be denied.

## CONCLUSION

The court FINDS that Smith is not entitled to habeas relief because he has failed to demonstrate that the Hawaii Supreme

Court's conclusion on the merits of his direct appeal was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts.  Accordingly, the court RECOMMENDS that the Amended Petition be DENIED.

IT IS SO FOUND AND RECOMMENDED.

Dated: Honolulu, Hawaii, May 15, 2007.



_____
Kevin S.C. Chang
United States Magistrate Judge

SMITH v. HAWAII; CIV. NO. 06-00618 SOM-KSC;dmp/Habeas 07/Smith 06-618 (merits and proc. bar)